## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARK MANNING,
GEORGE CHELSO,
*Plaintiffs,*

v.

COMMUNITY SOLUTIONS INC.,
SHERRY ALBERT
*Defendants.*

No. 3:20-cv-00337 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

Mark Manning and George Chelso ("Plaintiffs") sued Community Solutions, Inc.

("Community Solutions" or the "company") and Sherry Albert, Chief Operating Officer of

Community Solutions (collectively, "Defendants") following their termination from

employment, for breach of contract and violation of Connecticut General Statutes § 31-51q.

Defendants move to dismiss the Complaint in its entirety. Defs.' Mot. to Dismiss Pls.'

Revised Compl., ECF No. 22 (Jan. 13, 2021) ("Defs.' Mot.").

For the reasons stated below, Defendants' motion to dismiss is **GRANTED in part** and

**DENIED in part** without prejudice to renewal. Counts Three and Four of the Amended

Complaint will be dismissed from the case. The remaining claims will be addressed again,

following the close of discovery and renewal in the form of a summary judgment motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Mr. Manning and Mr. Chelso were both employed by Community Solutions, "a social

service agency [allegedly] employing more than one hundred [people]." Ex. B to Notice of

1

Removal ¶¶ 4, 6, ECF No. 1-2 (Mar. 12, 2020) ("Am. Compl."). "Mr. Manning [allegedly] began employment at Community Solutions . . . in [or around] 2007," and continued working with the company until he was terminated on or around June 22, 2018. *Id.* ¶ 7. Mr. Chelso also was employed by Community Solutions until he was allegedly "terminated from employment on or [around] June 22, 2018." *Id.* ¶ 8.

Sometime in 2015, Mr. Manning allegedly "filed a . . . complaint against Community Solutions" with the Connecticut Commission on Human Rights and Opportunities ("CHRO") for alleged "discriminatory employment practices," and "the matter [allegedly] was resolved to [Mr. Manning's] satisfaction without further litigation." *Id.* ¶ 10.

During his time of employment at Community Solutions, Mr. Manning allegedly "for many years[,] [*inter alia*,] . . . fulfilled[ ] the responsibilities outline[d] in his job description" *id.* ¶ 17, "protect[ed] the rights of other employees, . . . report[ed] unethical conduct of other employees to management," *id.* ¶ 18, and "maintained . . . professional, courteous and cooperative relationships with coworkers and supervisors," *id.* ¶ 19.

Mr. Chelso also allegedly "for many years[,] [*inter alia*,] . . . fulfilled[ ] the responsibilities outline[d] in his job description," *id.* ¶ 22, "protect[ed] the rights of other employees, . . . report[ed] unethical conduct of other employees to management," *id.* ¶ 23, and "maintained[ ] professional, courteous and cooperative relationships with coworkers and supervisors," *id.* ¶ 24.

Mr. Manning and Mr. Chelso allegedly were "outspoken critics of management practices," *id.* ¶ 9, and on or around June 22, 2018, both Mr. Manning and Mr. Chelso allegedly received notices of termination, *id.* ¶¶ 15, 20. "Mr. Manning [allegedly] was informed he was being terminated for violating three [company] policies involving meeting his job duties, ethics

violations and failing to maintain professional relations with other employees." *Id.* ¶ 15. "Mr. Chelso was [allegedly] informed he was being terminated for violating five [company] policies involving meeting his job duties, ethics violations and failing to maintain professional relations with other employees and clients." *Id.* ¶ 20.

Plaintiffs allege the "stated reasons [for their termination] were pretextual," in order to hide the true motivations for firing Mr. Manning and Mr. Chelso. *Id.* ¶¶ 16, 21. They allege that Mr. Manning was fired because the company wanted "to prevent [Mr. Manning] from filing another CHRO complaint and because he had previously filed the aforesaid 2015 CHRO complaint." *Id.* ¶ 15. As to Mr. Chelso, Plaintiffs claim that he was fired "to provide a pretextual basis for firing Mr. Manning, and because Mr. Chelso was perceived to be about to take his complaints about management outside the agency, to state and/or federal regulators." *Id.* ¶ 13.

Plaintiffs have filed suit against Community Solutions and Ms. Albert, the company's Chief Operating Officer.

### B. Procedural History

On October 3, 2019, Plaintiffs filed their initial Complaint in the Connecticut Superior Court, Judicial District of Hartford alleging five counts against Defendants. *See Manning v. Cmty. Sols., Inc.*, No. HHD-cv-19-6118039-S (Conn. Super. Ct. Oct. 3, 2019); *see also* Ex. A to Notice of Removal, ECF No. 1-1 (Mar. 12, 2020) ("Initial Compl.").

On February 27, 2020, Plaintiffs filed an Amended Complaint in the Connecticut Superior Court, Judicial District of Hartford. Am. Compl.

On March 12, 2020, Defendants removed the action to this Court. Notice of Removal, ECF No. 1 (Mar. 12, 2020).

On March 17, 2020, Plaintiffs filed a motion to remand the action to state court. Pls.'
Obj. to Removal to Fed. Ct., ECF No. 13 (Mar. 17, 2020) ("Pls.' Mot.").

On March 19, 2020, Defendants filed an opposition to Plaintiffs' motion to remand the
action to state court. Defs.' Resp. to Pls.' Obj. to Removal, ECF No. 14 (Mar. 19, 2020) ("Defs.'
Resp.").

On January 13, 2021, Defendants filed a motion to dismiss Plaintiffs' Amended
Complaint. Defs.' Mot.; Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pls.' Revised Compl.,
ECF No. 22-1 (Jan. 13, 2021) ("Defs.' Mem.").

On February 4, 2021, Plaintiffs filed an opposition to Defendants' motion to dismiss.
Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, ECF No. 24 (Feb. 4, 2021) ("Pls.'
Opp'n").

On February 19, 2021, Defendants filed a reply to Plaintiffs' opposition to their motion to
dismiss. Reply to Pls.' Opp'n to Defs.' Mot. to Dismiss Revised Compl., ECF No. 25 (Feb. 19,
2021) ("Defs.' Reply").

On March 30, 2021, the Court denied Plaintiffs' motion to remand. Ruling and Order on
Mot. to Remand, ECF No. 27 (Mar. 30, 2021).

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the
pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon
which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 358 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider

"matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Plaintiffs' Amended Complaint alleges six causes of action: (1) breach of contract as to Community Solutions, Inc. re: Mr. Manning; (2) breach of contract as to Community Solutions, Inc. re: Mr. Chelso; (3) violation of Connecticut General Statutes § 31-51q as to Sherry Albert re: Mr. Manning; (4) violation of Connecticut General Statutes § 31-51q as to Sherry Albert re: Mr. Chelso; (5) violation of Connecticut General Statutes § 31-51q as to Community Solutions, Inc. re: Mr. Manning; and (6) violation of Connecticut General Statutes § 31-51q as to Community Solutions, Inc. re: Mr. Chelso.[1] *See* Am. Compl.

Defendants moved to dismiss Plaintiffs' Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defs.' Mem. at 1. Defendants specifically moved to dismiss Plaintiffs' claims against Ms. Albert alleging violation of Connecticut General Statutes § 31-51q "because there is no individual liability under the relevant statute." *Id*. Plaintiffs have since agreed to dismissal of these specific claims as to Ms. Albert, because they concede there is no individual liability under Connecticut

---

[1] Because Plaintiffs' § 31-51q claims require interpretation of First Amendment law, this Court has federal question jurisdiction over this case, removed from state court. *See, e.g.*, *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 115–16 (2d Cir. 2004) (finding that the district court had jurisdiction over a plaintiff's claim under § 31-51q because "a federal question was implicated on the face of his well-pleaded complaint," as the plaintiff had "allege[d] on the face of his well-pleaded complaint that the Board [of Education] violated his rights as established, under section 31-51q, by either the United States or the Connecticut Constitution," and noting that "[c]ourts construing section 31-51q consistently look to federal First Amendment law to determine whether section 31-51q gives rise to a cause of action in the cases before them").

General Statutes § 31-51q. Pls.' Opp'n at 5. As a result, Counts Three and Four of the Amended Complaint will be dismissed from the case.

The Court will address the motion to dismiss as to each of Plaintiffs' remaining claims.

## A. The Breach of Contract Claims

### 1. The Existence of a Contract

Under Connecticut law, a breach of contract claim has four elements: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014).

Plaintiffs argue that the written Personnel Policies they were offered "operated as a contract, limiting the rights of the [D]efendants to fire an employee at will and without cause." Am. Compl. ¶¶ 27, 31. In support, they cite to *Gaudio v. Griffin Health Services Corporation*, 249 Conn. 523, 532 (1999) ("It is firmly established that statements in an employer's personnel manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between employer and employee." (internal quotation marks omitted) (citing *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 564 (1984)), and this Court's decision in *Simons v. Yale University, et al.*, No. 3:19-CV-1547 (VAB), 2020 WL 5816950, at *9 (D. Conn. Sept. 30, 2020) (denying Defendants' motion to dismiss because it found that the plaintiff's "continued employment relationship[ ] suffice[d] for purposes of determining whether a contract between the two parties had been formed" and because, under Connecticut law, employment manuals "'may give rise to an implied contract between an employer and its employee.'" (quoting *Jones v. HNS Mgm't Co. Inc.*, No. CV020471419S, 2003 WL 22332837, at *4 (Conn. Super. Ct. Sept. 25, 2003))).

Defendants argue that "plaintiffs failed to include any specific factual allegations concerning the formation of an agreement between [Mr.] Manning or [Mr.] Chelso and [the company] or specific language that demonstrates that the plaintiffs were not employed at an at-will basis." Defs.' Mem. at 8. According to Defendants "'the mere providing of a personnel policy and procedure manual to an employee does not convert an at-will employee to a contract employee.'" *Id.* (quoting *Brule v. Nerac Corp.*, No. HHDCVX04085023811S, 2008 WL 5572966, at *2 (Conn. Super. Ct. Dec. 23, 2008)).

Finally, Defendants note that this District "has also recognized that 'employers can generally insulate themselves from lawsuits by placing express disclaimers conspicuously in their personnel manuals that state it is not intended to create a contract or agreement between the employee and employer, and should not be interpreted as such.'" Defs.' Reply at 1–2 (quoting *Pribila v. Hyundai Motor Fin. Co.*, No. 3:05-CV-1852, 2006 WL 2715218, at *2 (D. Conn. Sept. 21, 2006)). They "acknowledge that Connecticut courts have recognized that employer policies or 'statements in an employer's personnel manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between employer and employee.'" *Id.* at 1 (quoting *Gaudio*, 249 Conn. at 532). Notwithstanding this caselaw, however, they argue that there was no contract because their policies "contain language that clearly and conspicuously disclaims any intent to create a binding employment contract or otherwise alter the at-will status of its employees." Defs.' Reply at 3.

Specifically, they point to language from the acknowledgment form of the Personnel Policies, signed by Mr. Manning and Mr. Chelso, which says: (1) "these policies do not create an expressed or implied contract of employment," (2) the signatory "understand[s] these policies do not create an express or implied contract of employment," and (3) that "CSI does not recognize

any contract of employment unless in writing and signed by the Chief Executive Officer and the employee." Ex. A to Defs.' Reply at 2–3, ECF No. 25-1 (Feb. 19, 2021); Ex. B to Defs.' Reply at 2–3, ECF No. 25-2 (Feb. 19, 2021). Based on these facts, Defendants argue that there was no contract and that Plaintiffs' breach of contract of claim should therefore be dismissed.

The Court disagrees, for now.

Defendants correctly point out that this district has previously granted motions to dismiss and for summary judgment because of "clear, express, and sufficiently conspicuous" disclaimers. *Pribila*, 2006 WL 2715218, at *2 (internal quotation marks omitted) (quoting *Davis v. Liberty Mut. Ins. Co.*, 218 F. Supp. 2d 256, 261 (D. Conn. 2002)); *see also Cardona v. Aetna Life & Cas.*, 3:96-CV-1009, 1998 WL 246634, at *5 (D. Conn. May 8, 1998) (citing various cases where Connecticut state courts "have held that contract claims based upon the terms of an employee handbook must fail if the handbook contained an effective disclaimer"). Plaintiffs, however, have not had an opportunity to raise potential counterarguments to the disclaimer Defendants identified in their reply brief, which was the first instance in which either party had provided a copy of the Personnel Policies. *See Schain v. Blue Cross Blue Shield of Conn., Inc.*, No. CV 930349216, 1996 WL 634286, at *3 (Conn. Super. Oct. 21, 1996) ("Some courts have denied summary judgment when other facts[, other than an explicit disclaimer,] have raised a question as to the intention of the parties in forming an employment contract[.]").

Accordingly, the motion to dismiss the breach of contract claim will be denied without prejudice to renewal, given the lack of opportunity for Plaintiffs to address the issue of the Personnel Policies issue raised by Defendants more squarely. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). In any event,

following the imminent close of discovery, *see* Order, ECF No. 31 (Sept. 18, 2021) (extending the deadline for the close of discovery until November 23, 2021), this issue can be raised again in a motion for summary judgment. *See id.* (extending the deadline for the filing of dispositive motions until January 4, 2022).

### B.  Connecticut General Statutes § 31-51q

Connecticut General Statutes § 31-51q provides that:

> Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge[.]

Conn. Gen. Stat. § 31-51q. To establish liability under this statute, Plaintiffs must show "protected activity, adverse action, a causal relationship between the activity and the adverse action, and that the protected activity did not interfere with the central purposes of the employment relationship." *Winik-Nystrup v. Mfrs. Life Ins. Co.*, 8 F. Supp. 2d 157, 159 (D. Conn. 1998); *see also McClain v. Pfizer, Inc.*, 692 F. Supp. 2d 229, 241 (D. Conn. 2010) (citing the same).

Plaintiffs allege that the company terminated Mr. Manning in order to "retaliate against him for having filed a CHRO complaint in 2015," and that it terminated both Plaintiffs "to prevent [them] from filing any complaints to state and/or federal regulators and administrative agencies in the future." Am. Compl. ¶¶ 46, 50. In so doing, Defendants allegedly

> abridge[d] [Plaintiffs'] right to freedom of speech under the First Amendment to the United States Constitution, and Article I, §§ 4, 14 of the Connecticut Constitution, freedom of association under the First Amendment to the United States Constitution and Article I, §§

4, 14 of the Connecticut Constitution, and the right to petition in a court or administrative agency for the redress of grievances under the First Amendment to the United States Constitution and Article I, §§ 4, 14 of the Connecticut Constitution.

*Id.* ¶¶ 46, 50.

Defendants employ several arguments in support of their motion to dismiss the § 31-51q claim against the company. First, they argue that Mr. Manning's "claim for retaliation falls under the purview of the Connecticut Fair Employment Practices Act ('CFEPA') and/or 42 U.S.C. 2000e-3 ('Title VII')." Defs.' Mot. at 12. According to Defendants, "because [Mr.] Manning is barred from asserting a retaliation claim under CFEPA or Title VII due to his failure to properly exhaust his administrative remedies, he masquerades his retaliation claim as [a] § 31-51q claim." Defs.' Mem. at 13.

Defendants also argue that Plaintiffs' § 31-51q claims are insufficient because "[P]laintiffs fail to sufficiently allege that they engaged in constitutionally protected activity." *Id.* at 14. They specifically argue that each of the three protected activities the Plaintiffs mention in their complaint—freedom of speech, freedom of association, and right to petition Government for redress of grievance—are not sufficient to survive the motion to dismiss.

Once again, the Court disagrees, at least for now.

The Connecticut Supreme Court has made clear that § 31–51q does not protect all types of speech and that it "should not be construed so as to transform every dispute about working conditions into a constitutional question." *Cotto v. United Techs. Corp.*, 251 Conn. 1, 17 (1999). "A clear prerequisite" to the statute's application "is that the speech at issue must be constitutionally protected." *Schumann v. Dianon Sys., Inc.*, 304 Conn. 585, 600 (2012) (citations omitted).

"'To be protected by the First Amendment, 'the speech must be on a matter of public concern, and the employee's interest in expressing himself on this matter must not be outweighed by any injury the speech could cause' to employee relationships." *Emerick v. Kuhn*, 52 Conn. App. 724, 743 (1999) (quoting *Waters v. Churchill*, 511 U.S. 661, 668 (1994)). Statements of public concern are those "that can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 779 (1999) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). A court determines whether speech addresses a matter of public concern by "evaluating 'the content, form, and context of a given statement, as revealed by the whole record.'" *Id.* (quoting *Connick*, 461 U.S. at 147–48).

Thus, the critical issue here is whether the alleged speech, the alleged prevention of the Plaintiffs from filing a CHRO claim, is a matter of public concern. Plaintiffs' factual allegations in support of this claim appear to be somewhat conclusory. *Compare* Am. Compl. ¶ 12 ("Fearing that Mr. Manning was about to raise another complaint against them and fearful that he might encourage other employees to similarly complaint [sic], the defendants fired Mr. Manning on or about June 22, 2018."), *with Arista Recs. LLC*, 604 F.3d at 120 (holding that the complaint must contain "factual amplification . . . to render a claim plausible." (internal citation and quotation marks omitted)). Nevertheless, because discovery will soon close, for the same reason that the Court will defer resolving the breach of contract claim, the Court also will defer resolving this claim.

Accordingly, on that basis alone, the motion will be denied without prejudice to renewal, and the issue can be reconsidered on a more complete record after the close of discovery. *See Dietz*, 136 S. Ct. at 1892 ("[D]istrict courts have the inherent authority to manage their dockets

and courtrooms with a view toward the efficient and expedient resolution of cases."); *see also Daley*, 249 Conn. at 779 (stating that a court determines whether speech addresses a matter of public concern by "evaluating the content, form, and context of a given statement, as revealed by the whole record." (internal citation and quotation marks omitted)).

## IV.   CONCLUSION

For the reasons stated below, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part** without prejudice to renewal. Counts Three and Four of the Amended Complaint will be dismissed from the case. The remaining claims will be addressed again, following the close of discovery and renewal in the form of a summary judgment motion.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE